# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TERRI W.,[1]
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 2:23-cv-1210
Watson, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Terri W. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12) and the Commissioner's response (Doc. 13).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in January 2021. (Tr. 378, 385). Plaintiff alleged that she was disabled beginning June 30, 2013 due to being blind or having low vision, COPD, depression, anxiety, GERD, hypokalemia, hypertension, and hyperlipidemia. (Tr. 411, 415). Her applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Kimberly Cromer. Plaintiff and a vocational expert (VE) appeared and testified at a hearing held March 10, 2022 (Tr. 122-38), which was adjourned to July 7, 2022 (Tr. 84-121) due

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

to issues with exhibits at the first hearing.  August 29, 2022, the ALJ issued a decision denying

plaintiff's DIB and SSI applications.  (Tr. 13-63).  On February 8, 2023, the Appeals Council

denied plaintiff's request for review, making the ALJ's decision the final decision of the

Commissioner.  (Tr. 1-4).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

2

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2017.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 30, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: COPD, sarcoidosis (history of), depression, anxiety, and PTSD (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR

404.1567(c) and 416.967(c) except no climbing of ladders, ropes, or scaffolds; no work at unprotected heights or around hazardous machinery; no commercial driving; and no concentrated exposure to extreme heat or cold, humidity, wetness, or pulmonary irritants. [Plaintiff] can perform simple routine work that requires only occasional decision-making, where there are only occasional changes in the work setting, and that requires no tandem work, no work with the general public as part of routine job duties, and no more than occasional interaction with coworkers and supervisors. Productivity should be based on end-of-day goals, rather than strict hourly production requirements. [Plaintiff] can perform work that requires a variable rate of speed, but she is precluded from fast-paced work such as on an assembly line or where the pace is set by a machine.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Plaintiff] was born [in] . . . 1962, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. [Plaintiff] subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 30, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium, unskilled occupations, such as kitchen helper (100,000 jobs in the national economy), stores laborer (50,000 jobs in the national economy), cook helper (180,000 jobs in the national economy), and hand packager (130,000 jobs in the national economy). (Tr. 58, 114).

(Tr. 20-63).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*,

587 U.S. ____, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305

U.S. 197, 229 (1938)).   Substantial evidence consists of "more than a scintilla of evidence but

less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007).  In deciding whether the Commissioner's findings are supported by substantial evidence,

the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.  Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D.  Specific Errors

5

In plaintiff's single assignment of error, she argues that the ALJ's decision at step five of the sequential evaluation process was not based on substantial evidence because it relied on VE testimony that was inconsistent with Bureau of Labor Statistics (BLS) data.

> 1. <u>VE testimony</u>

At step five of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that a claimant can perform work that is available in the national economy. *Rabbers*, 582 F.3d at 652. To meet this burden, "the Commissioner must make a finding 'supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987)).

Plaintiff argues that ALJ Cromer erred by overruling plaintiff's post-hearing objection regarding the VE's testimony. (*See* Tr. 510-887). Plaintiff argues that this objection presented data directly from the BLS, among other sources, demonstrating that the VE's testimony was incorrect. Plaintiff further argues that she presented her objection prior to the issuance of the ALJ's decision and had no obligation to present it at or prior to the hearing, since she could not reasonably have been expected to anticipate VE Robinson's testimony. Plaintiff argues that "[t]he issue here is not with the job numbers themselves; rather, the issue . . . is with how the ALJ handled a conflict with the job numbers between the claimant and the vocational witness. When such a conflict exists, the ALJ must resolve the conflict before relying on the vocational witness' testimony. . . ." (Doc. 12 at PAGEID 2360).

The Commissioner argues in response that plaintiff waived the opportunity to object to the VE's testimony by failing to raise an objection at the time of the administrative hearing.  The Commissioner argues that even if the Court does not find waiver, it should find that the ALJ properly relied on the VE's testimony at step five of the sequential evaluation process.  The Commissioner argues that the ALJ duly considered plaintiff's post-hearing objection but found that it was not compelling for various reasons.  The Commissioner argues that neither plaintiff nor her counsel have the requisite expertise or knowledge to rebut the VE's testimony.  Finally, the Commissioner argues that any error is harmless because even accepting the job numbers calculated by plaintiff in her post-hearing objection, those job numbers would still be considered significant numbers in the national economy at step five under Sixth Circuit precedent.

On January 5, 2022, prior to both ALJ hearings, plaintiff's counsel wrote in a letter to the agency:

> Since we do not know what the vocational witness will say at the hearing, we will need to compare that testimony to the DOT, the SCO and the Revised Handbook for Analyzing Jobs.  These three treatises contain in excess of a combined 2,300 pages of information about thousands of occupations.  The witness may also rely on other treatises . . . as well as other material or sources. . . .  Such sources are neither currently identifiable nor in the current record. . . .  Accordingly, we request an opportunity to submit a post-hearing brief . . . within ten (10) days of the hearing date.

(Tr. 454).

At the administrative hearing on July 7, 2022, the ALJ posed the following hypothetical to the VE:

> [W]e'll look at medium exertional level with the following.

7

I am going to preclude no climbing of ladders, ropes, o[r] scaffolds.  No work at unprotected heights.  No work around hazardous machinery.  No requirement for commercial driving.  I'd also like to avoid concentrated exposure to cold, heat, humidity, wetness, pulmonary irritants.  Assessment of the B criteria at mild limitation to understanding, remembering.

I'm going to look at moderate social limitation.  Moderate concentration, persistence, and pace and moderate adaption.  So I'm going to be even a little more restrictive on the B criteria then to satisfy the state agency.  I'm going to translate that B criteria to the following limitation.

We'll look at simple, routine work.  Looking and considering no tandem work.  No work with the general public as part of routine job duties.  Only occasional interaction with coworkers and supervisors.  That end-of-day work goals versus strict, hourly-production requirements, work of a variable rate.

I'm not meaning to necessarily eliminate all work in a manufacturing environment, but I do want to restrict work that would be on a fast-paced assembly line or work where the machine is setting the pace.  I'm contemplating that moderate adaption, only occasional decision making, only occasional changes to the work setting.

(Tr. 112-13).  This hypothetical was based on the residual functional capacity ultimately adopted by the ALJ.  (*See* Tr. 32-33).

Based on this hypothetical, the VE testified that the hypothetical individual would be able to perform the requirements of representative medium, unskilled occupations, such as kitchen helper (100,000 jobs in the national economy), stores laborer (50,000 jobs in the national economy), cook helper (180,000 jobs in the national economy), and hand packager (130,000 jobs in the national economy).  (Tr. 114).  The VE testified that elements of her responses that were not based on the DOT or the SCO (e.g., interactions with others, breaks, time off task, absenteeism) were drawn from her professional training and experience.  (Tr. 117).  Plaintiff's attorney cross-examined the VE.  (Tr. 118-20).  As relevant here, plaintiff's attorney asked whether the VE's job numbers included full-time and part-time positions (only full-time);

whether the numbers included self-employment positions (they did not); whether the numbers were based on BLS data (they were); whether the numbers were based on specific DOT codes or larger occupational bases (larger occupational bases); and if/how the VE further reduced the numbers based on the larger occupational bases (the VE reduced them to account for jobs that no longer exist in today's labor market or are only part-time).  (*See* Tr. 118-19).  Plaintiff's attorney did not specifically object to the VE's responses or ask that the record be held open for that purpose.[3]

On July 27, 2022, 20 days after the ALJ hearing, plaintiff submitted a brief arguing that the VE's testimony concerning job numbers was inconsistent with the DOT, the BLS, and companion publications.  (Tr. 567-70).  In it, plaintiff argued that of the medium level jobs that the VE provided in her testimony, there were less than 135 in the national economy when adjusted for plaintiff's limitations.  (Tr. 567, 569).  Plaintiff attached to her memorandum hundreds of pages of printouts from O*NET, BLS, and Occu Collect.  (Tr. 510-66, 571-887).  The ALJ considered plaintiff's post-hearing brief in her decision but did not find it convincing. The ALJ stated in pertinent part:

> The undersigned does not find the attorney's arguments compelling.  While certainly not a requirement to challenge vocational expert testimony post-hearing,[4] it is noted that [plaintiff]'s attorney did not question the vocational expert's qualifications at the hearing.  Nor did he ask any questions about any of the cited jobs or otherwise indicate any concerns that specific hypothetical limitations were inconsistent with the cited jobs.  [Plaintiff]'s attorney argues that the testimony is not consistent with the DOT, but he fails to identify the alleged inconsistencies.  In fact, the information he submitted from the DOT/SCO for kitchen helper (Exhibit 24E, p. 1-2); laborer, stores (Exhibit 25E, p. 1-2); cook helper (Exhibit 28E, p. 1-2); inspector and hand packager (Exhibit 27E, p. 1-2; Exhibit 32E, p. 1-2);

---

[3] The ALJ did hold the record for 14 days to secure certain records from April of 2022 through the date of the hearing.  (*See* Tr. 94, 120).
[4] As discussed below, authority within the Sixth Circuit suggests otherwise.

9

assembler, small products (Exhibit 29E); garment sorter (Exhibit 30E, p. 1-3); and assembler, plastic hospital products (Exhibit 31E, p. 1-10) does not indicate any requirements inconsistent with the established residual functional capacity. Furthermore, [plaintiff] has been found capable of performing the exertional demands of medium work, which means she can also perform the lesser physical demands of light and sedentary work. [Plaintiff]'s attorney has failed to establish that there is a significant erosion of job numbers at these exertional levels. [If [plaintiff] was limited to light work, then vocational factors and the Medical-Vocational Guidelines would require a finding of "disabled" as of age fifty-five, and if she was limited to sedentary work, then vocational factors would require a finding of "disabled" as of the alleged onset date, at which time she was fifty. Under those scenarios, the number of light or sedentary jobs consistent with the residual functional capacity would be irrelevant. However, as [plaintiff] can perform medium work, all occupations that are classified at the medium exertional level or less and are consistent with the other aspects of the established residual functional capacity are occupations which constitute "other work" [plaintiff] could perform.]

Moreover, [plaintiff]'s attorney fails to provide any direct argument with correlation that the cited jobs and job numbers provided by the vocational expert were not supported by her testimony. He submitted "Work Context" information for the various SOC codes which include the DOT codes cited by the vocational expert and indicated what percentage of the workday certain activities were required or what percentage of jobs involved certain situations and he compiled that information into the charts found at Exhibit 26E, p. 3-4. However, some of the information contained in the prepared chart conflicts with the information provided.

* * * *

For the four cited medium DOT occupations and for the light inspector/hand packager position, [plaintiff]'s attorney did not submit copies of the 2021 Occupational Requirement Survey for the relevant SOC codes. Rather, the data in his chart appears to be based on the "Work Context" information submitted. This information is based on responses by a random sample of workers in the occupations within the SOC code (https://www.onetcenter.org/dataCollection.html). [Plaintiff]'s attorney has not provided any evidence documenting the validity of the survey results with respect to any of the cited occupations. Nor has he provided any compelling evidence that the survey results are an accurate reflection of how the cited jobs are generally performed in the national economy.

[Plaintiff]'s attorney asserts that 100% of cook helper positions require tandem work, as do 90% of stores laborer positions, 88% of hand packager positions, and 67% of kitchen helper positions (Exhibit 26E, p. 3). However, that is based on the survey responses from a random sample of workers in which they were asked to rate the degree of importance of working with others in a group or team in the job. [Plaintiff]'s attorney has provided no evidence to substantiate the validity of the survey results. Moreover, in the context of the hypothetical to the vocational expert (and the established residual functional capacity), tandem work refers to job tasks that must be performed with a coworker(s). For example, an item that it so heavy or awkwardly shaped that it requires two or more workers to lift and/or carry it; a situation where one worker holds an object while another worker manipulates or modifies the object in some manner; or one worker recording/documenting information provided by or to another worker. The survey question does not reference tandem work or specifically reference performing tasks that require the assistance of another employee. Rather, it is a more general question about the need to get along with others in the work setting, and whether the job requires working as a part of a larger group or team or can be performed alone. For example, in a commercial kitchen, there would be multiple employees involved in food preparation (cook helper) or clean-up (kitchen helper) and everyone would need to complete their assigned job duties but that does not mean that the job tasks cannot be done individually. For stores laborer, 28% of survey respondents stated it was extremely important to work with others in a group or team in this job; 50% said it was very important, 12% said it was important, 2% said it was fairly important, and 8% said it was not important at all (Exhibit 25E, p. 7); in other words, 92% of respondents indicate some degree of importance for working with others. However, another question on the survey asks to what extent does the job require the worker to perform job tasks in close physical proximity to other people. 8% of respondents answered, "very close (near touching)", 45% chose "moderately close (at arm's length)", while 17% said "slightly close (e.g., shared office)", 14% chose "I work with others but not closely (e.g., private office)", and 15% chose "I don't work near other people (beyond 100 ft.)." (Exhibit 25E, p. 11). Therefore, 29% of respondents indicate a degree of physical proximity that would not be consistent with tandem work, while an additional 17% gave a response that makes it questionable whether tandem work would be required. For cook helper, which [plaintiff]'s attorney asserts requires 100% tandem work, 12% of survey respondents chose "I don't work near other people (beyond 100 ft.)" and 15% chose "I work with others but not closely (e.g., private office))." (Exhibit 28E, p. 11).

Furthermore, the Social Security Administration has determined that the Dictionary of Occupational Titles (DOT) and its companion publication the Selected Characteristics of Occupations (SCO) are the primary sources relied upon to determine the requirements of jobs in the national economy. The Social Security

Administration recognizes that the DOT is out-of-date and has been working on developing a new source of vocational guidance. The Social Security Administration explicitly chose not to adopt O*NET, the system that the Department of Labor created to replace the DOT. Therefore, the information in the DOT can (and must) be relied upon in determining the physical and mental demands of work; although a vocational expert can testify to differences between how the job is classified in the DOT and how the VE has observed the job being performed in the workplace. As noted above, [plaintiff]'s attorney has failed to establish that the restrictions in the established residual functional capacity are inconsistent with the requirements of the jobs cited by the vocational expert as set forth in the DOT and SCO. Nor has he provided compelling evidence that the requirements of the cited jobs, even if generally performed in the national economy in a manner different than what is reflected in the (outdated) DOT/SCO descriptions, are inconsistent with the established residual functional capacity.

\* \* \* \*

Other specific issues and inconsistencies could be addressed but suffice it to say that [plaintiff]'s attorney has failed to provide a compelling argument for rejecting the vocational expert's testimony regarding occupations consistent with the established residual functional capacity and which exist in significant numbers in the national economy.

(Tr. 59-62).

The Court begins with the Commissioner's waiver argument. Numerous courts within the Sixth Circuit have addressed cases with similar facts over the past several years, with many finding that plaintiffs waive objections to vocational testimony if they are not raised at the administrative hearing—notwithstanding the submission of post-hearing briefs.[5] *See Gross v. Comm'r of Soc. Sec.*, No. 3:22-cv-229, 2022 WL 17717422, at *8 (N.D. Ohio Oct. 26, 2022) ("[T]he ALJ wasn't required to accept Gross's post-hearing brief about an alleged conflict

---

[5] The Commissioner cites two Sixth Circuit cases for the proposition that "a claimant's failure to object to testimony offered by a vocational expert at the time of the administrative hearing waives the claimant's right to raise such issues in the district court." (Doc. 13 at PAGEID 2369-70 (citing *O'Neal*, 799 F. App'x at 318, and *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)). Neither decision is precisely on point, however, as the claimants in those cases conducted no cross-examination at all and did not submit post-hearing but pre-ALJ decision briefs.

because Gross never objected to the vocational expert's testimony at the hearing or asked for permission to file an objection."); *Vega v. Comm'r of Soc. Sec.*, No. 1:20-cv-01934, 2021 WL 6012038, at *8 (N.D. Ohio Dec. 3, 2021) ("Having not objected to the VE's testimony at the administrative hearing, and having failed to cross-examine the VE in a manner that adequately preserved Ms. Vega's objection as to whether the VE's testimony was consistent with the DOT, I conclude that Ms. Vega has waived her right to object to the VE's testimony" in a post-hearing brief) (report and recommendation), *adopted*, 2021 WL 6000037 (N.D. Ohio Dec. 20, 2021); *Murnahan v. Comm'r of Soc. Sec.*, No. 3:19-cv-01348, 2020 WL 7024847, at *6 (N.D. Ohio Nov. 30, 2020) ("[A]bsent any specific evidence to the contrary, such as when a claimant makes an on the record request at the hearing to hold the hearing open for post-hearing brief detailing his objection to the VE's testimony and the ALJ clearly agrees to so hold the record open, a claimant who fails to object at the hearing to the testimony of a VE waives the right to subsequently object to that testimony and an ALJ has no obligation to address unsolicited post-hearing objections to the VE testimony."); *Brown v. Comm'r of Soc. Sec.*, No. 3:22-cv-1258, 2023 WL 5765875, at *2 (N.D. Ohio Sept. 7, 2023) (quoting *Murnahan*); *Luna v. Soc. Sec. Admin.*, No. 1:19-cv-1414, 2020 WL 5549318, at *15 (N.D. Ohio Aug. 28, 2020) (finding no procedural error with the ALJ's lack of explanation for rejecting a post-hearing brief where the plaintiff "did not object to [the VE] offering her expert opinion" and "did not object to [the VE's] answers" to the plaintiff's cross examination) (report and recommendation), *adopted sub nom. Luna v. Comm'r of Soc. Sec.*, 2020 WL 5544379 (N.D. Ohio Sept. 15, 2020); *Zimmerman v. Comm'r of Soc. Sec.*, No. 1:18-cv-1233, 2019 WL 4736267, at *8 (N.D. Ohio Sept. 27, 2019)

(Notwithstanding the plaintiff's post-hearing brief, "[t]he failure to object to evidence, or failure to cross-examine a VE about a topic at the hearing, precludes the claimant from later raising the issue."); *Roberts v. Comm'r of Soc. Sec.*, No. 2:18-cv-541, 2019 WL 4023549, at *8 (S.D. Ohio Aug. 26, 2019) (finding a claimant's post-ALJ hearing objection waived where the issue was known to the attorney but not raised in cross-examination of the VE at the hearing); *Turner v. Comm'r of Soc. Sec.*, No. 2:19-cv-900, 2019 WL 5781608, at *7 (S.D. Ohio Nov. 5, 2019) (following *Roberts* and noting that "[d]espite cross-examining the VE, Plaintiff's counsel failed to challenge the VE's classification of Plaintiff's past work as an "Inspector and Hand Packager" or to alert the VE or ALJ that there was a possible inconsistency between the VE's testimony and the evidence in the record") (report and recommendation), *adopted*, 2020 WL 132269 (S.D. Ohio Jan. 13, 2020); *Jones v. Comm'r of Soc. Sec.*, No. 2:17-cv-1062, 2019 WL 2511111, at *9 (S.D. Ohio June 18, 2019) (Notwithstanding the submission of a post-hearing brief, "Plaintiff could have cross-examined the VE to elicit testimony as to her ability to perform the requirements of a packer, sorter or inspector, but did not.  Plaintiff has thus waived her challenge to the testimony.") (report and recommendation), *adopted*, 2019 WL 3082655 (S.D. Ohio July 12, 2019); *Kidd v. Berryhill*, No. 5:17-cv-420, 2018 WL 3040894, at *6-7 (E.D. Ky. June 19, 2018) (failure to object to a specific element of a VE's testimony at the time of the administrative proceeding, when the claimant "certainly could have" done so, waived the objection).[6]

---

[6] In *Adams v. Comm'r of Soc. Sec.*, No. 1:19-cv-01310, 2020 WL 13505362 (N.D. Ohio Dec. 11, 2020), the court held that the plaintiff was *not* required to raise the objection at the ALJ hearing before submitting the issue in a post-ALJ hearing brief.  *Id.* at *4.  In that case, however, the plaintiff had asked the VE related questions on cross-examination, raised his intention to file a related post-hearing brief, and the ALJ approved of this submission on the record.  *Id.*  Several of the cases discussed are not inconsistent with this conclusion—stating that the claimant's failure to request, and the ALJ's failure to explicitly permit, a post-hearing brief factored into their conclusions.  *See, e.g.*, *Gross*, 2022 WL 17717422, at *8; *Murnahan*, 2020 WL 7024847, at *6.

In addition, in both *Fitzmaurice v. Comm'r of Soc. Sec.*, No. 1:20-2745, 2021 WL 6052163 (N.D. Ohio Dec. 21, 2021), and *Patterson v. Saul*, No. 3:18-cv-0641, 2019 WL 4237854 (M.D. Tenn. Aug. 2, 2019) (report and recommendation), *adopted sub nom. Patterson v. Soc. Sec. Admin.*, 2019 WL 4237855 (M.D. Tenn. Aug. 23, 2019), the plaintiffs submitted pre-hearing briefs similar to that submitted here (*see* Tr. 454), raising the possibility of a vocational-related objection. *See Fitzmaurice*, 2021 WL 6052163, at *6 n.4; *Patterson*, 2019 WL 4237854, at *4. The courts found that neither the pre-hearing brief nor the unsolicited post-hearing brief saved the vocational issues from waiver. *Fitzmaurice*, 2021 WL 6052163, at *6 & n.4; *Patterson*, 2019 WL 4237854, at *9.

Other courts have reached the opposite conclusion. *See Westmoreland v. Berryhill*, No. 3:17-cv-00096, 2018 WL 1522118, at *3 (S.D. Ohio Mar. 28, 2018) (the plaintiff did not waive vocational argument raised in a post-hearing brief submitted before the ALJ issued her decision); *Burton v. Berryhill*, No. 3:18-cv-56, 2019 WL 1585116, at *6-7 (W.D. Ky. April 12, 2019) (discussing seven cases in the Western District of Kentucky holding that vocational objections were not waived, though not addressed at the administrative hearing, because it would be impractical and unreasonable to require such objections) ("[D]ue to the thousands of vocational descriptions in the DOT and the lack of prior notice regarding which three would be identified during the hearing—the plaintiffs in these seven cases would not have been familiar enough with the information to effectively cross-examine the vocational expert about obsolescence of the DOT descriptions 'on the fly.'").

The Court finds the first line of cases more persuasive.  In plaintiff's statement of errors, she cites *Biestek v. Berryhill* for the proposition that "[a]n applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods- where she got the information at issue and how she analyzed it and derived her conclusions."  (Doc. 12 at PAGEID 2355 (quoting *Biestek*, 139 S. Ct. at 1156)).  Plaintiff omits, however, the beginning of the quoted sentence: "*Even without specific data*, an applicant may probe the strength of testimony. . . ."  *Biestek*, 139 S. Ct. at 1156 (emphasis added).  If anything, this appears to lend support to the Commissioner's position.  Plaintiff's counsel did not object to the VE's answers or ask the ALJ at the hearing to hold the record open for the purpose of making such objections.  Under these circumstances, the Court finds that plaintiff waived the vocational objections raised in her post-hearing brief.

Even if plaintiff's vocational objections were not waived, however, the Court finds they are without merit.  Plaintiff argues that the ALJ failed "to both recognize and address" inconsistencies between the VE's testimony and the data presented in her post-hearing brief.  (Doc. 12 at PAGEID 2356).  Plaintiff cites Social Security Ruling (SSR) 00-4p[7] for the proposition that the ALJ was required to explicitly resolve the conflict between the VE's testimony and the numbers presented in plaintiff's post-hearing brief in her written decision.  Plaintiff argues that the analysis in the ALJ's decision was inadequate, and the alleged conflict

---

[7] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010 (quoting 20 C.R.F. § 402.35(b)(1)).

"should have been addressed by a vocational witness during a supplemental hearing or through interrogatories." (Doc. 12 at PAGEID 2359).

As explained in *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462 (6th Cir. 2017), however:

> [A]n ALJ has an affirmative duty to inquire as to whether a vocational expert's evidence *conflicts with the information provided in the DOT*, and to resolve any "apparent conflicts." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). We have found it sufficient to satisfy this duty where the ALJ asks the vocational expert if there is a conflict. *See Martin v. Comm'r of Soc. Sec.*, 170 F[. App'x] 369, 374 (6th Cir. 2006).

*Id.* at 468 (emphasis added). Here, the ALJ asked the VE: "To the extent any of these questions were beyond the [DOT] or the SCO, . . . [on] what would you have relied on. . . ?" (Tr. 117). The premise of this question assumes that the VE's responses did not conflict with the DOT, and the VE responded that any answers beyond the DOT were based on her "professional training and experience." (*Id.*). This satisfied the ALJ's duty to inquire as set forth in SSR 00-4p. *O'Neal*, 799 F. App'x at 318 (quoting *Martin*, 170 F. App'x at 374) ("The ALJ satisfied this requirement when she asked the vocational expert whether her testimony aligned with the DOT. Contrary to O'Neal's suggestion, the ALJ was under no duty 'to conduct an independent investigation' into the vocational expert's testimony to determine whether it was correct.").

The question then becomes whether the post-hearing brief raises an apparent conflict between the DOT information and the VE's testimony. It does not. Plaintiff's post-hearing brief states that the VE's testimony was "not consistent with the DOT or BLS data and . . . so erroneous as to be unreliable." (Tr. 567). Plaintiff attaches hundreds of pages of Occu Collect, O*Net, and BLS printouts without particular elements noted or highlighted (Tr. 510-66, 571-

887), which is too vague—in and of itself—to raise an apparent conflict between the DOT and the VE's testimony.[8]

Plaintiff also included a table purporting to show that less than 135 of the medium jobs identified by the VE remained after various reductions were made to account for the limitations included in the ALJ's RFC determination.  (Tr. 569).  As the ALJ stated in her decision, however, the data used in the medium jobs table proffered by plaintiff is based on survey responses from a random sample of workers, and plaintiff failed to explain why this information is reliable.  (Tr. 60-61).[9]  To the contrary, the ALJ noted that the survey on which plaintiff relied for the medium job table's data did not ask respondents about "tandem work" in the technical sense used by the Social Security administration; rather, the survey asked a "more general question about the need to get along with others in the work setting, and whether the job requires working as a part of a larger group or team or can be performed alone."  (Tr. 61).  In addition, the ALJ highlighted responses to other, similar survey questions that suggested far less erosion to

---

[8] The DOT is a reliable source of job information.  *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020) (citing 20 C.F.R. § 404.1566(d)(1)).  *See also* SSR 00-4p, 2000 WL 1898704, at *2 ("The regulations at 20 CFR 404.1566(d) and 416.966(d) provide that we will take administrative notice of 'reliable job information' available from various publications, including the DOT.  In addition, as provided in 20 CFR 404.1566(e) and 416.966(e), we use VEs and VSs as sources of occupational evidence in certain cases.").  O*NET data is not necessarily reliable: "[I]n 2010, the SSA determined that O*NET in its current form was not suitable for disability claims adjudication.  *See* Occupational Infor. Dev. Advisory Panel, *Findings Report: A Review of the National Academy of Sciences Report*, Report to the Comm'r of Soc. Sec. 1, 8 (June 28, 2010), https://www.ssa.gov/oidap/Documents/COMPLETE%20FINAL-Findings%20Report%20OIDAP%20062810.pdf."  *O'Neal*, 799 F. App'x at 317.

[9] The Court distinguishes this situation from the situation in *Jackson v. Comm'r of Soc. Sec.*, No. 2:14-cv-988, 2015 WL 3470190, (S.D. Ohio June 1, 2015).  In *Jackson*, the plaintiff submitted a post-hearing brief detailing the fact that two of the three jobs provided as examples by the VE required "frequent" and "constant" reaching under the DOT, but the ALJ had limited the plaintiff to only "occasional" reaching.  *Id.* at *2.  Waiver of vocational arguments was not at issue in this case.  The Court in *Jackson* properly identified this as a direct conflict between the VE's testimony and the DOT and held that the ALJ was required to explicitly explain his resolution of the conflict.  *Id.* at *4.

the available medium job numbers provided by the VE than suggested by plaintiff's counsel. (Tr. 61).

Barring any apparent conflict between the VE's testimony and the DOT, the Court's last consideration is whether the ALJ's discussion and rejection of plaintiff's post-hearing argument demonstrates that her decision to credit the VE's testimony as persuasive is based on substantial evidence. It does. "[W]here there is no direct conflict between the DOT and the testimony of the VE requiring an ALJ to explain how that conflict was resolved, there is no heightened standard of articulation for an ALJ to meet when considering post-hearing criticisms/concerns about the VE's testimony." *Murnahan*, 2020 WL 7024847, at *6. *See also Luna*, 2020 WL 5549318, at *16 (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)) ("The ALJ was required to consider the opinion, but nothing more."). *Cf. Fitzmaurice*, 2021 WL 6052163, at *9 (quoting *Herndon v. Comm'r of Soc. Sec.*, 2021 WL 811660, at *25 (N.D. Ohio March 3, 2021)) ("[T]here is no requirement that the ALJ resolve conflicts between vocational evidence provided by either state agency employees or by other VEs.") (alteration in original). The ALJ carefully and thoroughly considered plaintiff's post-hearing objection, and she provided various reasons for rejecting it. (Tr. 60-62).

In sum, the Court finds that plaintiff waived her ability to raise a vocational argument by failing to, at the time of the hearing, object to the VE's qualifications or testimony or specifically request that the ALJ hold the record open for purposes of an objection related to her cross-examination of the VE. Even if the Court were to consider its merits, the Court finds that plaintiff's post-hearing objection did not raise a direct conflict between the VE's testimony and

the DOT.  As such, ALJ Cromer was under no heightened articulation burden, and her decision to credit the VE's testimony over the information presented in the post-hearing brief is based on substantial evidence.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's Statement of Specific Errors (Doc. 12) be **OVERRULED**, the Commissioner's non-disability finding be **AFFIRMED**, and this case be closed on the docket of the Court.

Date: 6/4/2024

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TERRI W.,  
      Plaintiff,

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
      Defendant.

Case No. 2:23-cv-1210  
Watson, J.  
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).